IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| STATE OF VERMONT,<br><br>              Plaintiff,<br><br>v.<br><br>3M COMPANY, E. I. DU PONT DE NEMOURS AND COMPANY, THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, CORTEVA, INC., DUPONT DE NEMOURS, INC., CHEMGUARD, INC., TYCO FIRE PRODUCTS L.P., NATIONAL FOAM, INC., BUCKEYE FIRE EQUIPMENT COMPANY, AND KIDDE-FENWAL, INC.<br><br>              Defendants. | Civil Action No. 2:19-cv-134<br><br>JURY TRIAL DEMANDED |

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP ("Tyco"), Chemguard, Inc. ("Chemguard"), and 3M Company ("3M") (collectively, "Removing Defendants") by and through undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, to the United States District Court for the District of Vermont. As grounds for removal, Removing Defendants state as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff seeks to hold Tyco, Chemguard, 3M, and other Defendants liable based in part on their alleged conduct in designing, manufacturing, and selling firefighting chemical agents, aqueous film-forming foam ("AFFF"), which were developed for sale to the United States military and others pursuant to government contracts and in accordance with the military's rigorous specifications. Removing Defendants intend to assert the federal "government contractor" defense in response to Plaintiff's claims. Under the federal officer removal statute,

1

28 U.S.C. § 1442(a)(1), Removing Defendants are entitled to remove this action in order to have their federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## PLAINTIFF'S SUMMONS & COMPLAINT

2. This action was filed on June 26, 2019, in Vermont Superior Court, bearing Docket No. 546-6-19 Cncv. (Ex. A, Summons and Compl.) Venue is proper in this Court pursuant to 28 U.S.C. §§ 126 and 1442(a) because Vermont Superior Court is located within the District of Vermont.

3. Tyco was served with the initial Summons and Complaint on July 10, 2019, and Chemguard was served with the same on July 23, 2019. (Exs. A, B). No other process, pleadings, or orders have been served upon Tyco and Chemguard.

4. 3M was served with the initial Summons and Complaint on July 10, 2019. (Ex. C). No other process, pleadings, or orders have been served upon 3M.

5. Removing Defendants are not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1). *See, e.g.*, *Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 357 (1st Cir. 2009) ("Removal under [§ 1442(a)(1)] does not require that all defendants agree to removal."); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245 (S.D.N.Y. 1994).

6. Plaintiff purports to bring this action "as sovereign, as trustee of State natural resources and owner of property (or of substantial interests in property) . . ., and pursuant to its

2

*parens patriae* authority on behalf of the citizens of Vermont." (*See* Compl. ¶ 19). Plaintiff generally alleges that Defendants have manufactured AFFF products containing perfluorooctane sulfonate (PFOS), perfluorooctanoic acid (PFOA), perfluorononanoic acid (PFNA), and/or perfluorohexanesulfonic acid (PFHxS), and/or perfluoroheptanoic acid (PFHpA). (*Id.* ¶ 2). Plaintiff further alleges that the sale and uses of these products have contaminated Vermont drinking water, groundwater, surface water, wildlife, soil, and sediment. (*Id.* ¶ 12).

7. As to Removing Defendants, Plaintiff asserts claims for natural resource damages and restoration (*id.* ¶¶ 300–308), relief/damages under Vermont's Groundwater Protection Act (*id.* ¶¶ 309–317), strict liability for design defect and/or defective product (*id.* ¶¶ 318–329), strict liability for failure to warn (*id.* ¶¶ 330–340), negligence (*id.* ¶¶ 341–354), public nuisance (*id.* ¶¶ 355–366), private nuisance (*id.* ¶¶ 367–372), and trespass (*id.* ¶¶ 373–385). Plaintiff also asks for punitive damages. (*Id.* ¶ 398).

8. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of Vermont Superior Court.

9. By filing a Notice of Removal in this matter, Removing Defendants do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Removing Defendants specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

10. Removing Defendants reserve the right to amend or supplement this Notice of Removal.

11. If any question arises as to the propriety of the removal of this action, Removing Defendants request the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL
## OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

12. Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) the defendant was acting "under color of" federal office at the time of the allegedly tortious conduct; and (4) the defendant raises a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989) (internal quotation marks omitted); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135.

13. Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, "the statute as a whole must be liberally construed" in favor of removal. *Isaacson*, 517 F.3d at 136.

14. All requirements for removal under § 1442(a)(1) are satisfied here. *Cf., e.g.*, Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-md-

2873-RMG, ECF No. 103 (May 24, 2019) ("MDL Order") at 3-6 (denying motion to remand and finding that federal officer removal was proper in case against Tyco, Chemguard, 3M, and other manufacturers); *Ayo v. 3M Co.*, No. 18-CV-0373, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same).

### A. MilSpec AFFF

15. Since the 1960s, the United States military has used AFFF that meets military specifications ("MilSpec AFFF") on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF in response to deadly, catastrophic fires aboard the aircraft carriers USS Forrestal in 1967 and USS Enterprise in 1969.[1] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[2]

16. The manufacture and sale of AFFF procured by the military is governed by rigorous military specifications created and administered by Naval Sea Systems Command.[3] All such AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[4] Prior to such listing, a "manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[5] The

---

[1] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[2] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), http://bit.ly/2mujJds.

[3] *See* Mil-F-24385 (1969). The November 1969 MilSpec and all its revisions and amendments through September 2017 are available at https://tinyurl.com/yxwotjpg.

[4] *Id.* § 3.1.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[6] After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[7] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[8]

17. The MilSpec has always required that AFFF contain "fluorocarbon surfactants"—the class of chemical compounds that includes PFOA, PFOS, PFNA, PFHxS, and PFHpA.[9] The current MilSpec expressly contemplates that PFOA and PFOS will be used (subject to recently imposed limits) in AFFF formulations.[10]

18. So-called "Part 139" airports are those serving scheduled passenger flights by 9 passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. See 14 C.F.R. § 139.1 (2019). The federal government requires Part 139 airports to use MilSpec AFFF. On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil F 24385F." Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact,

---

[6] *See, e.g.*, Ex. D, MIL-PRF-24385F(2), at 18 (2017)). The cited MilSpec designates Naval Sea Systems Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification. (*See* Dep't of Defense SD-6, at 3.)

[7] Dep't of Defense SD-6, at 1.

[8] *See, e.g.*, Ex. D, MIL-PRF-24385F(2) § 4.1 (2017).

[9] *See* Mil-F-24385 § 3.2 (1969).

[10] *See* Ex. D, MIL-PRF-24385F(2) § 6.6 & Tables 1, 3 (2017).

mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]." The FAA explained:

> There are several reasons for this requirement. First of all, AFFF has to be compatible when mixed. AFFF manufactured by different manufacturers, although meeting the UL 162 standard, may not be compatible. AFFF meeting the Military Specification will always be compatible with other Military Specification AFFF no matter the manufacturer. Second, AFFF meeting the military specification requires less agent than AFFF meeting UL 162 to extinguish the same size fire. Finally, the requirement to use Mil Spec is in concert with the National Fire Protection Association National Fire Code 403, paragraph 5.1.2.1.

19. On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards." Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to use, with limited exceptions, MilSpec AFFF.

20. The airport Plaintiff identifies in the Complaint—Southern Vermont Airport, which is owned by the State of Vermont—is a Part 139 airport, and as such, is required to purchase AFFF that meets MilSpec standards. On information and belief, the AFFF used and allegedly discharged into the environment at that site since at least 2006 has been MilSpec AFFF.

**B.    The "Person" Requirement Is Satisfied**

21. The first requirement for removal under the federal officer removal statute is satisfied here because Tyco (a limited partnership), Chemguard (a corporation), and 3M (a corporation) are "persons" under the statute. For purposes of § 1442(a)(1), the term "'person'" includes "'companies, associations, firms, [and] partnerships.'" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1). Likewise, the Second Circuit has held that a non-natural entity is a "person" for purposes of § 1442(a)(1). *See Isaacson*, 517 F.3d at 135–36 (internal quotation marks omitted).

## C. The "Acting Under" Requirement Is Satisfied

22. The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Id.* at 137 (internal quotation marks omitted). "The words 'acting under' are to be interpreted broadly." *Id.* at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

23. The requirement is met here because Plaintiff challenges Defendants' alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[11] Accordingly, the military has long depended upon outside contractors like Removing Defendants to develop and supply AFFF. *See Ayo*, 2018 WL 4781145, at *8–9 (holding that Tyco, Chemguard, and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF (internal quotation marks omitted)); *see also* MDL Order

---

[11] *Fulfilling the Roosevelts' Vision* at 37.

8

at 3–4 (finding that the "acting under" requirement was satisfied because Tyco demonstrated that it was manufacturing AFFF under the guidance of the U.S. military).

24. Plaintiff's own allegations confirm that that its alleged injuries arise in part from the use of MilSpec AFFF at military sites and a Part 139 airport in Vermont and that Removing Defendants were "acting under" federal officers of the Department of Defense and its agencies when manufacturing MilSpec AFFF. Indeed, Plaintiff affirmatively alleges that Removing Defendants and the other Defendants made these products for, and sold them to, the U.S. military and a Part 139 airport in Vermont:

(a) "From the 1960s through 2001, the DOD purchased AFFF exclusively from 3M and Tyco." (Compl. ¶ 104.)

(b) "3M, Chemguard, Tyco, National Foam, Buckeye, and Kidde and/or their predecessors also sold AFFF products to DOD." (Compl. ¶ 107.)

(c) "3M, Chemguard, Tyco, National Foam, Buckeye, and Kidde advertised, offered for sale, and sold AFFF to the military as well as State government entities . . . ." (Compl. ¶ 110.)

(d) "At the Southern Vermont Airport in Clarendon, PFAS have been detected near current and former firefighting training areas where AFFF has been used." (Compl. ¶ 249.)

(e) "PFOS, PFOA, PFNA, PFHxS, and/or PFHpA found within Defendants' AFFF products and/or manufactured by Defendants for use in AFFF have contaminated surface waters in the State, including, the Air National Guard facility, South Burlington, and the Southern Vermont Airport, Clarendon." (Compl. ¶ 279.)

(f) "PFOS, PFOA, PFNA, PFHxS, and/or PFHpA found within Defendants' AFFF products and/or manufactured by Defendants for use in AFFF have contaminated groundwater in the State, including, for example, at the following locations: a. Air National Guard facility, South Burlington; b. Camp Ethan Allen Training Site, Jericho/Underhill; . . . and d. Southern Vermont Airport, Clarendon." (Compl. ¶ 271.)

(g) "[I]nvestigations revealed AFFF-related PFAS contamination and injury associated with a number of known sites in Vermont, including but not limited to the following: a. Air National Guard facility, South Burlington; b. Camp Ethan Allen Training Site, Jericho/Underhill; . . . and d. Southern Vermont Airport, Clarendon." (Compl. ¶ 243.)

25.    In designing, manufacturing and supplying the MilSpec AFFF products at issue, Removing Defendants acted under the direction and control of one or more federal officers. Specifically, Removing Defendants acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[12] Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[13]

26.    The applicable MilSpec has always required that AFFF contain constituents from the same class of chemical compounds to which PFOA, PFOS, PFNA, PFHxS, and PFHpA belong.[14] The current MilSpec expressly contemplates that PFOA and PFOS will be used (subject to recently imposed limits) in AFFF formulations.[15] Indeed, the September 2017 amendments to the MilSpec recognize that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."[16]

### D.    The Causation Requirement Is Satisfied

27.    The third requirement, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (alteration, citation, and internal quotation marks omitted). Like the "acting under"

---

[12] *See* Ex. D, MIL-PRF-24385F(2) (2017).

[13] *See* Dep't of Defense, SD-6, at 1.

[14] *See* Mil-F-24385 § 3.2 (1969).

[15] *See* Ex. D, MIL-PRF-24385F(2) § 6.6 & Tables 1, 3 (2017).

[16] *Id.* § 6.6.

requirement, "[t]he hurdle erected by this requirement is quite low." *Id.* Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Id.*[17]

28. "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack ... occurred *while* Defendants were performing their official duties." *Id.* at 137–38. Here, the Plaintiff's claims arise from Defendants' production and sale of AFFF manufactured to military specifications. Plaintiff alleges that the use of PFOS, PFOA, PFNA, PFHxS, and/or PFHpA in AFFF rendered Defendants' products defective. Defendants contend that the use of such chemicals was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by the Defendants for use by the military and designed to meet specifications established by the Department of Defense. Military installations, including those in and around Vermont, are required to employ MilSpec AFFF. The government also extended required use of MilSpec AFFF to Part 139 airports, and therefore, certain airports in Vermont, including Southern Vermont Airport, are required to purchase AFFF that meets MilSpec standards. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Defendants could not "comply with both [their] contractual obligations and the state-prescribed duty of care." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order at 5–6 ("Here, New York's claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal office removal is satisfied here.").

---

[17] The "Acting Under" and "Under Color Of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

## E. The "Colorable Federal Defense" Requirement Is Satisfied

29. The fourth requirement ("colorable federal defense") is satisfied by Removing Defendants' assertion of the government contractor defense. The Second Circuit has repeatedly held that this defense supports removal under § 1442(a)(1). *See Isaacson*, 517 F.3d at 139; *Crane Co.*, 771 F.3d at 116.

30. At the removal stage, a defendant need only show that its government contractor defense is colorable. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116 (citing *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)).[18] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

31. Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications;

---

[18] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (citations omitted)).

and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

32. Removing Defendants have satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[19] Removing Defendants' products appeared on the DOD Qualified Products Listing,[20] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.[21] *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order at 4 (finding Tyco demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

33. Moreover, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. Initially, the military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.[22] Indeed, it is clear that the United States has long understood that AFFF may contain or break down into

---

[19] *See* MIL-PRF-24385F(2) (2017).

[20] MIL-F-24385 QPL/QPD History for Type 3 AFFF (June 23, 2016), https://tinyurl.com/y6m9jcxd; MIL-F-24385 QPL/QPD History for Type 6 AFFF (June 23, 2016) https://tinyurl.com/yy3u6vax.

[21] *See* Dep't of Defense SD-6, at 1.

[22] *See, e.g.*, MIL-F-24385 §§ 3.16 & 4.7.16 (Rev. A May 2, 1977).

PFOS and/or PFOA, that AFFF constituents can migrate through the soil and potentially reach groundwater, and that it has been reported that this may raise environmental or health issues.[23] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[24] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[25] More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA in drinking water. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[26] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "fluorocarbon surfactants,"[27] and expressly specifies (subject to recently imposed limits) use of "PFOS" and "PFOA" in AFFF formulations.[28] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably

---

[23] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1–6 (Nov. 4, 2002) (excerpt).

[24] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[25] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[26] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/y5un3zq8.

[27] Ex. D, MIL-PRF-24385F(2) § 3.2 (2017).

[28] *Id.* § 6.6 & Tables 1, 3.

precise specifications for the claimed defective design."); MDL Order at 5 ("As to whether Tyco adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, Tyco points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .).

34. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011) ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

WHEREFORE, Removing Defendants hereby remove this action from Vermont Superior Court to this Court.

Dated at Burlington, Vermont this 31st day of July, 2019

By: /s/ Ritchie E. Berger

Ritchie E. Berger, Esq.
Dinse P.C.
209 Battery Street, P.O. Box 988
Burlington, VT 05401
(802) 864-5751
rberger@dinse.com

Michael A. Olsen*
Daniel L. Ring*
Richard F. Bulger*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
molsen@mayerbrown.com
dring@mayerbrown.com
rbulger@mayerbrown.com

*Counsel for Defendant 3M Company*

Joseph G. Petrosinelli*
Liam J. Montgomery*
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
P: (202) 434-5547
F: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Tyco Fire Products, LP & Chemguard, Inc.*

*Applications for admission *pro hac vice* forthcoming

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing **NOTICE OF REMOVAL,** with its Exhibits, were served on all parties via first class mail on July 31, 2019:

Thomas J. Donovan, Jr. (ERN 5440)
Joshua R. Diamond (ERN 3515)
Deputy Attorney General
Robert F. McDougall (ERN 2973)
Laura B. Murphy (ERN 5042)
Assistant Attorneys General
109 State Street
Montpelier, VT 05609-1001
Phone: (802) 828-3186
thomas.donovan@vermont.gov
joshua.diamond@vermont.gov
robert.mcdougall@vermont.gov
laura.murphy@vermont.gov
*Counsel for Plaintiff*

Ellen Nunno Corbo
Taylor Colicchio LLP
425 5th Avenue, 5th Floor
New York, NY 10016
(212) 661-1700
ecorbo@tcslawyers.com
*Counsel for Defendant Buckeye Fire Equipment Company*

Keith E. Smith, Esq.
Greenberg Traurig, LLP
1717 Arch St., Suite 400
Philadelphia, PA 19103
215-988-7843
smithkei@gtlaw.com
*Counsel for Defendant National Foam, Inc.*

Jonathan I. Handler
jhandler@daypitney.com
Day Pitney LLP
One International Place
Boston, MA 02110
T: (617) 345-4600
*Counsel for Defendant Kidde-Fenwal, Inc.*

E. I. Du Pont De Nemours and Company
974 Centre Road
Wilmington, DE 19805

Chemours Company LLC
1007 Market Street
Wilmington, DE 19899